

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| CATALINA ADAMS, | ) | |
| | ) | No. 40799-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER ADAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

STAAB, C.J. — Peter Adams appeals the trial court's order finding him in contempt for violating a temporary parenting plan provision requiring joint decision-making for major, nonemergency healthcare decisions. We agree with his first argument that a valid order did not exist at the time he is alleged to have violated the parenting plan and therefore the finding of contempt was an abuse of discretion. We reverse the order on contempt.

BACKGROUND

In 2011, while living in California, Peter and Catalina Adams[1] had a marriage ceremony but they did not obtain a marriage license or certificate. The couple had three

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity. No disrespect is intended.

children together, including E.A., who suffers from a chronic illness. E.A. received regular treatment from a physical therapist in California until the family moved to Spokane in 2017, at which time a new local provider was selected.

In 2023, Catalina filed a petition for legal separation and requested a temporary parenting plan. Peter moved to dismiss the petition, arguing the court did not have subject matter jurisdiction because the parties were never legally married. A commissioner granted Peter's motion but stayed dismissal "until one of the parties files a Petition for CIR[2] and Parenting and Support, and the temporary orders regarding parenting and support in this matter can be consolidated into the parenting action." Clerk's Papers (CP) at 373-74. Catalina moved for revision.

On July 20, 2023, while Catalina's motion to revise the order of dismissal was pending, the superior court entered a revised temporary parenting plan, noting: "This plan is an agreement of the parties, settling issues of Mr. Adams['s] Revision Motion." CP at 375. The revised plan included an equal residential schedule and required joint decision-making for nonemergency medical decisions. The temporary parenting plan provided a warning that failure to follow the order could result in a finding of contempt.

---

[2] Committed intimate relationship.

On July 25, the parties mediated various issues resulting in a CR 2A stipulation. The stipulation contained their agreed residential schedule for the children. There is nothing in the record indicating that the CR 2A stipulation was adopted by the court.

Meanwhile, a superior court judge affirmed the commissioner's ruling on summary judgment and denied Catalina's motion to revise. The court found "[t]he parties are not legally married, and therefore this Court does not have subject matter jurisdiction under a legal separation action."[3] CP at 382. Catalina did not appeal.

*Peter files a new petition*

On December 8, 2023, Peter filed a petition for a parenting plan under a new case number. He stated that a court had not already approved a parenting plan. He did not file a proposed parenting plan with his petition. In response, Catalina disagreed and stated that the temporary parenting plan entered in July 2023 "remain[ed] in force pending a ruling by the Court addressing this action." CP at 10.

---

[3] The court correctly concluded that it did not have authority to enter an order on separation, given that the parties were never married, but misspoke by suggesting that the court did have subject matter jurisdiction. While we understand the trial court's misuse of the term "subject matter jurisdiction," if the court truly lacked subject matter jurisdiction, its only authority would be to enter an order of dismissal, and it would lack authority to enter a stay or any temporary orders. *See O'Keefe v. Dep't of Revenue*, 79 Wn.2d 633, 634, 488 P.2d 754 (1971) ("Perhaps no word is more deserving of characterization as a 'weasel word of the law' than the much used and often abused word 'jurisdiction.'"). On the other hand, an order based on irregularities or errors of law is voidable and until avoided is regarded as valid. *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968).

On April 5, 2024, separate from the proceedings in the new case, the court entered an order in the original legal separation action. The order acknowledged the previously entered order granting summary judgment and dismissal and found that "[g]ood cause exists to **close** the court file to not allow any further documents to be filed in this case pursuant to [the order of dismissal]." CP at 384. The parties were notified of the court's entry of the order.

On May 29, Catalina filed a motion in the second case to adopt the temporary parenting plan entered on July 19, although with major modifications, including that she be named as primary custodial parent, with primary placement and primary decision-making authority. Peter opposed Catalina's motion and filed his own proposed parenting plan.

On July 11, the court heard argument on Catalina's motions. Catalina argued that the court should incorporate the temporary parenting plan from the prior action but also argued that adequate cause existed to modify the plan. Peter disagreed, stating the parties had been operating in good faith under the CR 2A agreement. The court agreed that it did not need to find adequate cause because this was a new petition but adopted the temporary parenting plan agreed to by the parties in July 2023.

About one week before the court ordered incorporation of the temporary parenting plan, Peter authorized his mother to take E.A. to California for three days to receive

massage therapy from the physical therapist the parties previously used.[4] Catalina was

unaware that E.A. traveled to California for treatment until he returned.

*Catalina Moves for Contempt*

On July 29, Catalina moved the court to find Peter in contempt. She alleged Peter

violated the temporary parenting plan by unilaterally authorizing E.A. to receive medical

treatment in California, when the plan called for joint decision-making on major

nonemergency healthcare decisions.

Peter opposed the motion, raising several defenses, including that there was not a

valid court ordered parenting plan in effect on the day he sought medical treatment for

E.A.

The court found Peter in contempt of the July 19, 2023, temporary parenting plan.

It determined the temporary parenting plan was a valid court order at the time of Peter's

conduct, "not only by operation of law, but also by operation in fact that the parties had

been following this for a year." CP at 310-11. Specifically, the court held that "[t]he

parenting plan is a valid court order which the parties have followed over a year. Judge

Anderson ordered on July 11, 2024 that the July 19, 2023 parenting plan was the

temporary plan in place and although her order did not indicate 'nunc pro tunc' the

---

[4] Although the record does not contain the specific dates of E.A.'s travel to California for treatment, the court found Peter's conduct occurred "[i]n the week prior to July 14, 2024." CP at 266. The parties appear to agree that Peter's allegedly contemptuous behavior occurred before the parenting plan was incorporated on July 11.

parties have followed the plan and such plan has been in operation by fact, nunc pro tunc." CP at 266.

After finding that Peter was able to follow the order in the past and that he intentionally disobeyed the decision-making provision regarding major nonemergency healthcare decisions, the court held Peter in contempt.

Peter moved to revise the commissioner's ruling. His motion was denied.

Peter appeals.

ANALYSIS

Peter contends the court erred by finding him in contempt because there was no lawful court order in effect at the time of his actions. He contends the stay automatically expired by its express language when the new action was filed and the temporary parenting plan *could be* consolidated. He also points to the April 2024 order closing the legal separation action as confirmation that the stay had been lifted. Peter further asserts the contempt court errantly relied on mischaracterizing the temporary parenting plan as a "de facto" order and "nunc pro tunc" to revive the inoperative order.

Catalina responds that the temporary parenting plan remained operative after the subsequent parenting action was filed because the court expressly acted to preserve it and the stay was not self-terminating. She further argues the April 2024 order was merely administrative in scope and function; it did not lift the stay or vacate the temporary

parenting plan. Finally, she asserts the court had broad, plenary, and continuing

jurisdiction to enforce the order regardless of the case number.

Under Washington law, a valid, existing court order is a prerequisite to a finding

of civil contempt. "Contempt of court" means "intentional disobedience of a lawful court

order." *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995); *see*

RCW 7.21.010(1)(b). When reviewing an order of contempt, a challenge to the validity

of the underlying court order raises an issue of law that we decide de novo. *See State v.*

*Miller*, 123 Wn. App. 92, 97-98, 96 P.3d 1001 (2004).

A temporary parenting plan "[t]erminates when the final decree is entered . . . or

when the petition for dissolution, legal separation, or declaration of invalidity is

dismissed." RCW 26.09.060(10)(c). Nevertheless, "[t]he court has inherent power to

stay its proceedings where the interest of justice so requires." *King v. Olympic Pipeline*

*Co.*, 104 Wn. App. 338, 350, 16 P.3d 45 (2000). The court controls the length and

parameters of the stay. *See Chaffee v. Keller Rohrback LLP*, 200 Wn. App. 66, 85, 401

P.3d 418 (2017).

Here, the court stayed dismissal of the legal separation action on the following

condition:

> Given that the parties have already litigated temporary orders concerning
> parenting and support issues, the Court finds there is good cause to STAY
> the dismissal of this action until one of the parties files a Petition for CIR
> and Parenting and Support, and the temporary orders regarding parenting
> and support in this matter can be consolidated into the parenting action.

CP at 374.

The plain language of the stay order provides that it was automatically lifted upon satisfaction of the condition. Specifically, the stay remained in effect only until one of the parties filed a petition in which the temporary parenting plan could be consolidated. Peter filed a subsequent petition to establish a parenting plan; an action in which the court could consolidate the temporary orders into the new action. This met the condition and lifted the stay.

At the contempt hearing, the trial court nonetheless held that the July 19, 2023 parenting plan remained in effect until the July 11, 2024 parenting plan was entered in the subsequent parentage action. The court based its decision on two factors: the parties' agreement to follow the temporary parenting plan and its conclusion that the July 11 parenting plan was entered nunc pro tunc.

While Catalina concedes that the trial court could not find contempt based on the parties' agreement or an order entered nunc pro tunc, she contends that consolidation or entry of a new parenting plan was an express prerequisite to lifting the stay. Under this reading, the stay was not lifted until July 19 when the temporary parenting plan was filed in the parentage action. We disagree.

The phrase "and the temporary orders . . . can be consolidated into the parenting action" reads as an explanation of *why* the stay was being put in place, not as an additional procedural condition that must occur before the stay lifted. CP at 374. The

operative conditional language in the order tied the duration of the stay to a single event: "until one of the parties files a Petition for CIR and Parenting and Support." CP at 374. Once that filing occurred, the stated purpose of the stay was satisfied. Nothing in the order required the court or parties to actually complete consolidation before the stay dissolved; if the court intended such a requirement, it would normally use mandatory language such as "until the temporary orders *are* consolidated" or "upon consolidation."

Peter contends that the April 5 order entered in the original action further supports his position that the stay was lifted upon the filing of his parentage action. Catalina argues that the April 5 order was ministerial only. We agree with Peter that the April 5 order provides additional support for our interpretation.

The April 5 order was entered sua sponte after Peter filed the second action but before either party moved the court to adopt a temporary parenting plan. The order provided: "Good cause exists to close the court file to not allow any further documents to be filed in this case pursuant to [the order of dismissal]." CP at 384. Although the April 5 order did not expressly lift the stay, its directive barring any further filings in that case effectively foreclosed the possibility of a later order lifting the stay. The order likewise eliminated any ability to file contempt motions in that matter.

We conclude the stay lifted when the condition was met: when Peter filed a subsequent parentage action in which the prior parenting plan could be consolidated. When the stay lifted, the order of dismissal became effective. When the petition for

9

No. 40799-3-III
*Adams v. Adams*

separation was dismissed, the temporary parenting plan was no longer a valid order.

Thus, at the time Peter directed his child to receive medical services, there was no court

order preventing him from doing such. Whether he violated the parties' CR 2A agreement

is a separate issue not before this court on review. The trial court abused its discretion by

finding Peter in contempt of an order that was not in effect at the time of his actions.

Reversed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Cooney, J.